# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PATRICIA VALERIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 4752 |
| v. ) | |
| ) | Judge Rebecca R. Pallmeyer |
| CYGNUS BUSINESS MEDIA, INC., ) | Magistrate Judge Maria Valdez |
| A Delaware corporation, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, Patricia Valerio ("Plaintiff" or "Valerio"), by and through her attorneys, The Law Offices of Eugene K. Hollander, and for her Response to Defendant's, Cygnus Business Media ("Cygnus"), Motion For Summary Judgment, states as follows:

## INTRODUCTION

Defendant Cygnus has moved for summary judgment on several bases, all of which are meritless. Valerio filed her Complaint against Cygnus alleging breach of contract, promissory estoppel, and fraud. Cygnus now argues that Valerio cannot state the essential elements of her claims, despite an abundance of evidence proving otherwise. As will be explained more fully, the facts in this case require this Court to deny Cygnus's Motion for Summary Judgment. *Regner v. City of Chicago*, 789 F.2d 534 (7th Cir. 1986). Valerio's case is predicated on the employment negotiations, agreement, and eventual withdrawal of an accepted employment offer by Cygnus Business Media. Cygnus has not, and cannot, disputed the fact it denied Valerio the opportunity to perform the duties for which she was hired.

**FACTUAL BACKGROUND**

Valerio was employed at Western Printing Machinery from September 2003 until December 2005 as the Director of Cutting Technology Division. ( A. Facts ¶ 1-2)[1]. While employed at Western Printing Machinery, Valerio earned $65,000.00 per year plus commissions. (A. Facts ¶ 3). The last full year that Valerio worked at Western Printing Machinery, she earned approximately $113,487.18. (A. Facts ¶ 3). During the fall of 2005, Valerio responded to an on-line job posting for a position as a sales representative for Cygnus Business Media. (A. Facts ¶ 4).

On approximately October 24, 2005, Defendant contacted Valerio regarding a position within its company. (A. Facts ¶ 5). Valerio then began a series of interviews with various Cygnus publishers, editors, and human resources personnel regarding a position as a Sales Representative for two different Cygnus publications. (Facts ¶ 17-18, A. Facts ¶ 5). During the course of Valerio's interviews with Cygnus, she engaged in compensation negotiations with Tom Lynch, Group Publisher, and Judy Heidebrecht, Vice President Human Resources. (A. Facts ¶ 20). Valerio and Cygnus negotiated a compensation plan based in part on an annual salary and commission on sales completed up to and over her budget. (A. Facts ¶ 20). Valerio and Cygnus negotiated a base salary of $60,000.00 on November 8, 2005. (A. Facts ¶ 20). During one of her interviews with Cygnus, Lynch advised Valerio that there was a sense of urgency in getting the position filled as soon as possible. (A. Facts ¶ 14).

Approximately two weeks before December 1, 2005 (or on or about November 17, 2005), Valerio called Lynch to inquire on the status of the sales representative position, as she had not been offered a position at that time. (A. Facts ¶ 15). During that conversation, Lynch advised

---

[1] References to the Rule 56.1(a)(3) Statement of Facts are made as "Facts ¶ __." References to Rule 56(b)(3) Statement of Additional Facts as "A. Facts ¶ __."

Valerio that there was a possibility that one of Defendant's publications was going to be cancelled, but that it would not affect her hire into the company. (A. Facts ¶ 16). In fact, Lynch explicitly stated to Valerio that it would not affect her hire into the company. (A. Facts ¶ 18).

Sometime after this conversation, Cygnus extended an oral job offer to Valerio for $53,000.00, which Valerio accepted. (A. Facts ¶ 22, 27). That same day, Valerio submitted her resignation to Western Printing Machinery. (A. Facts ¶ 29). However, soon after her initial acceptance, Valerio contacted Lynch to rescind the job offer as she could not take the lower compensation. (A. Facts ¶ 30). Later that same day, Lynch called Valerio and offered her the salary base that she was seeking. (A. Facts ¶ 31). Valerio agreed to take the position with Cygnus on the condition that she was provided a formal, written offer.

On or about December 2, 2005, Valerio received a formal offer of employment from Defendant. (Facts ¶ 30). Valerio accordingly submitted her final resignation to Western Printing Machinery and agreed to accept the position with Cygnus starting on Monday, December 12, 2005. (A. Facts ¶ 33). On December 11, 2005, Tom Lynch contacted Valerio at her home to inform her that one of the publications in her territory had been cancelled. (A. Facts 34). Valerio interviewed at a different Cygnus publication, but was not offered a position there. (A. Facts ¶ 36-37).

On or about December 13, 2005, Vice President Human Resources, Judy Heidebrecht, called Valerio and told Valerio that there was no longer a position for her within Defendant's company. (A. Facts ¶ 38). Valerio immediately contacted her supervisor at Western Printing Machinery to see if she could return to her position there. (A. Facts ¶ 39). However, her supervisor advised her that she could not come back there since all of the customers were already told she left and the company had been informed of her resignation. (A. Facts ¶ 40-41).

## PLAINTIFF'S VOLUNTARY DISMISSAL OF HER BREACH OF CONTRACT CLAIM

Plaintiff will file separately from this Response to Defendant's Motion for Summary Judgment a Motion for Voluntary Dismissal of her breach of contract claim. Accordingly, this Response will only address Cygnus's motion for summary judgment on Valerio's promissory estoppel and fraud claims.

## THE STANDARD OF SUMMARY JUDGMENT

A motion for summary judgment should be granted when the pleadings, depositions, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). Summary judgment must be denied where the issue of material fact is "genuine," that is, where the evidence allows a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986).

In making this determination, the court must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Assoc'd Milk Producers, Inc. v. Meadow Gold Dairies, Inc.*, 27 F.3d 268, 270 (7th Cir. 1994). When deciding a motion for summary judgment, a judge's function is not to weigh evidence, but to determine whether there is a genuine issue for trial. *Liberty Lobby Inc.*, 477 U.S. at 248.

As discussed below, no matter which state's laws are used, Defendant's motion for summary judgment on Valerio's promissory estoppel and fraud counts must fail as there exists genuine issues of material fact for each remaining claim.

**ARGUMENT**

I. **DEFENDANT CYGNUS RAISES A CHOICE OF LAW BETWEEN ILLINOIS AND WISCONSIN**

Valerio filed a complaint alleging breach of contract, promissory estoppel, and fraud against Cygnus in the Circuit Court of Cook County, Law Division. Defendant, a Delaware corporation with its principal place of business in Fort Atkinson, Wisconsin, filed a notice of removal to the Northern District of Illinois based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(b). In its motion for summary judgment, Cygnus raises and addresses which state's substantive law should apply based upon the choice-of-law rules of the forum state.

A federal court exercising diversity jurisdiction must consult the choice-of-law rules of the state in which the court sits to determine which state's substantive law should apply. *Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*, 2005 U.S. Dist. Lexis 29663 *1, *8, citing, *Reid by Reid v. Norfolk & W. Ry. Co.*, 157 F.3d 1106, 1110 (7th Cir. 1998). Illinois courts apply the law of the state where the tort occurred, unless another state has a more significant relationship to the occurrence or to the parties, or unless a conflict of law exists and makes a difference in the outcome of the litigation. *Walters v. Maren Eng'g Corp.*, 246 Ill. App. 3d 1084, 617 N.E.2d 170, 173, *International Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 (7th Cir. 1985).

In this case, as discussed in Defendant's brief, there is no outcome determinative conflict between Wisconsin law and Illinois law. As such, the law of Illinois should be used; however, as Defendant has raised an *arguendo* choice of law conflict for Plaintiff's promissory estoppel claim, Valerio will address each possible conflict of law. Regardless of the law used, sufficient evidence remains of genuine issues of material fact on each of Valerio's surviving claims.

## II. PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM MUST SURVIVE AS THERE ARE NUMEROUS GENUINE ISSUES OF MATERIAL FACT UNDER EITHER STATE'S LAWS

Valerio alleges in her complaint that she is entitled to relief under the doctrine of promissory estoppel. Defendant alleges that Valerio's promissory estoppel claim must be dismissed because Valerio was offered nothing more than an employment relationship with Cygnus that was terminable at the will of either party. In fact, Cygnus made an unambiguous promise of employment to Valerio, which she reasonable relied upon to her detriment. There exists genuine issues of material fact upon which a jury must decide. This issue is not appropriate for summary judgment – Plaintiff's argument and reasoning to this issue is set forth below.

### A. PROMISSORY ESTOPPEL UNDER WISCONSIN LAW

Promissory estoppel is an equitable contract remedy that enforces a promise, in the absence of proof of the elements of a contract, where there has been substantial reliance on the promise, but only to the extent justice requires. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 698, 133 N.W.2d 267 (1965). The Wisconsin state courts developed a three-part promissory estoppel test: (1) the promise was one for which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise; (2) the promise induced such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. *Hoffman*, 26 Wis.2d at 698, 133 N.W.2d 267. The first two elements of promissory estoppel "present issues of fact which ordinarily will be resolved by a jury, the third requirement, that the remedy can only be invoked where necessary to avoid injustice, is one that involves a policy decision by the court." *Id.*

Cygnus relies heavily upon *Heinritz v. Lawrence University* to support its claim that Valerio's promissory estoppel claim cannot survive summary judgment. 194 Wis.2d 606, 505 N.W.2d 81 (Ct. App. 1995). In *Heinritz*, the plaintiff was a carpenter who applied for work with Lawrence University. After an offer of employment was made to Heinritz, Lawrence University was forced to rescind the offer due to insurance coverage concerns regarding Heinritz's disabled son. *Heinritz*, 194 Wis.2d at 610, 505 N.W.2d at 83. Lawrence University filed a motion to dismiss the complaint for failing to properly state a cause of action upon which relief may be granted. The Wisconsin Court of Appeals affirmed the dismissal.

The only analysis the Wisconsin Court of Appeals affords promissory estoppel in *Heinritz* is that, "[t]he court held that where the employment promised was at-will and the employee reasonably relied upon the promise and then was later terminated, the promise was fulfilled because the employment had ensured." *Heinritz*, 194 Wis.2d at 612, 505 N.W.2d at 83. Valerio did not, however, simply rely on a promise that she was to be employed as an at-will employee; she resigned her other job in specific reliance on Defendant's false representations.

The only comparison that can reasonably be made with *Heinrtiz* to the case at bar is that offers of employment were withdrawn prior to the start date of the respective plaintiffs. In *Heinritz*, the defendant made an oral offer of employment, which the court concluded was an indefinite oral contract providing for at-will employment. In the present case, Cygnus did not merely offer a simple oral offer of employment to Valerio. Instead, Valerio entered into aggressive employment negotiations with Cygnus for both her base compensation and commission scheme. (A. Facts ¶ 20). Moreover, after the initial offer from Cygnus proved to be unsatisfactory to Valerio, Cygnus re-entered negotiations and aggressively pursued Valerio. Cygnus made representations that Valerio was employed at Cygnus, including confirming her

7

salary and commissions, detailing which publications she would be assigned to, advising Valerio of her sales budgets for 2006, and sending an email to Donna Cornwell and Vicki Frohmader introducing Valerio as a member of the PTEN/PD sales team with her start date. (Facts ¶ 24).

A more proper analysis to Wisconsin law is the case of *Bicknese v. Sutula*, 2003 WI 31, 660 N.W.2d 289. In *Bicknese*, the UW Medical School hired the plaintiff after she was considering job offers from UW Medical School and University of New York – Buffalo Medical School. *Bicknese*, 203 WI at P3, 660 N.W.2d at 292. Sutula and the UW Medical pursued Bicknese and advised Bicknese that they already considered her a member of the UW faculty. *Id*. Similar to the case at bar, Sutula made a false representative to Bicknese regarding the status of her tenure and employment with UW. *Id.* at P7-P8. The Wisconsin Supreme Court reinstated the jury's finding and damages award in favor of Bicknese on her promissory estoppel claim. In the matter before the court, Lynch falsely advised Valerio that the closing of a publication would not affect her status at Cygnus. A question of fact remains as to whether Lynch made this statement to Valerio.

In this case, a genuine issue of material fact remains on the most decisive issue in the case. That is, whether or not Cygnus made a promise to Valerio that she had a job at Cygnus, and whether Cygnus made affirmative representations to that fact.

### B. PROMISSORY ESTOPPEL UNDER ILLINOIS LAW

When an employer's promise of continued employment falls short of constituting a contract, the employer may nevertheless be estopped from retracting the promise if the employee can establish that the following elements were present: (1) an unambiguous promise; (2) which the employer should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the employee, (3) which induces such action or forbearance,

(4) and which must be enforced in order to avoid injustice. *Kulins v. Malco, A Microdot Company, Inc.*, 121 Ill. App. 3d 520, 527, 459 N.E.2d 1038, 1045. The doctrine of promissory estoppel is usually used in the alternative to an actual contract, oral or written.

Defendant claims that Valerio's promissory estoppel claim must fail on substantive grounds, because Valerio was hired as an at-will employee and because there was no unambiguous offer to employer her for certain duration. On the contrary, a question remains as to whether the stated promise to employ Valerio was unambiguous. Moreover, this is a proper remedy where a substantive breach of contract claim fails.

    **1.**    <u>**UNDER ILLINOIS LAW, THERE MUST BE AN UNAMBIGUOUS PROMISE AND FORESEEABILITY TO ESTABLISH THE ELEMENTS OF PROMISSORY ESTOPPEL**</u>

The clear and definite test for contract formation is not necessarily the same as the unambiguous requirement for promissory estoppel. *Lamaster v. Chicago and Northeast Ill. Dist. Council of Carpenters*, 766 F.Supp. 1497, 1505-06, 1991 U.S. Dist. LEXIS 8317 (1991). Illinois law requires an unambiguous promise to establish the first prong of promissory estoppel. It is up to a jury to decide whether the reliance made by Valerio was unreasonable, unexpected, or unforeseeable. *Busilovsky v. Figgie Int'l*, 1995 U.S. Dist. Lexis 7341 (1995).

The issue of foreseeability of reliance remains a question of fact. *Quake Constr., Inc. v. American Airlines, Inc.,* 141 Ill. 2d 281, 310, 565 N.E.2d 990 (Ill. 1990). The reliance in the present matter (by way of Valerio relinquishing a job which paid her handsomely and that was satisfied in) must have been foreseeable to Cygnus. "The promise essential to a claim of promissory estoppel need not be expressed, only unambiguous." *Perlin v. Board of Education* 86 Ill.App.3d 108, 407 N.E.2d 792 (1980). In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference – the intention of

the parties must in some way be communicated since a person's intention can be ascertained by another only by means of outward expressions such as words and acts." *Bank of Marion v. Robert "Chick" Fritz, Inc.*, 9 Ill.App.3d 102, 108, 291 N.E.2d 138 (1973).

Cygnus's promises to employ Valerio were unambiguous because it was definite and complete. Her salary and commissions had been aggressively negotiated, her start date had been finalized, and there was no doubt that Valerio was an employee of Cygnus Business Media. When Cygnus made the offer of employment to Valerio it knew that she would be leaving her current position and starting work at Cygnus on a start date in Wisconsin. Valerio reasonably and justifiably relied upon the statements and intentions of Cygnus she decided to leave her then-present job in Illinois and work, at least part of the time, in Wisconsin.

### 2. ALL ELEMENTS OF A CONTRACT MUST BE PRESENT – ONLY CONSIDERATION MAY BE ABSENT

"Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking." *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (citing *Bank of Marion*, 57 Ill.2d at 124, 311 N.E.2d 138. Accordingly, Valerio will prevail on her claim for promissory estoppel, if she can present written evidence of an "unambiguous promise" which, would constitute an enforceable employment contract, were it not for the lack of consideration. See *Dumas*, 416 F.3d at 677. As explained above, it was Cygnus's intention to make an unambiguous employment offer to Valerio. There is no question that Cygnus offered the position to Valerio, advised Valerio of her goals and territories, and even stated in her offer letter, "[a]s Sales Rep for PTEN/PD, you will have the opportunity to share in its success and achieve your personal career objectives as well." For consideration, Valerio resigned from her employment at Western Printing Machinery and in return offered her $60,000.00 plus commissions to work for Cygnus.

### 3. DEFENDANT INCORRECTLY RELIES UPON THE REID CASE

Defendant also relies upon the case of *Reid v. Transtector Systems, Inc.* to support its contention that Valerio cannot prove promissory estoppel. 1987 U.S. Dist. LEXIS 4161 *1 (N.D. Ill. 1987). The case of *Reid* is distinctively different from Valerio since the plaintiff in *Reid* alleged that the defendant employer was aware when it offered her employment that her acceptance would trigger the one-year restrictive covenant contained within her agreement with her previous employer. *Reid,* at *8. The court dismissed Reid's claim for failing to state a claim upon which relief could be granted on substantive grounds. This situation is markedly different from the present case since Valerio has alleged that she was offered employment based upon a fraudulent statement from Lynch.

### 4. CASE LAW SUPPORTING PROMISSORY ESTOPPEL IN OTHER JURISDICTIONS

In Illinois, there is a lack of case law on point with the present matter before the court. However, other circuits and districts have addressed similar situations. In *Bower v. At & T, Tech.*, 852 F.2d 361 (8th Cir. 1988), the court distinguished between an at-will employer who fires an employee one day after beginning work and an at-will employer who withdraws the offered employment before the employee is given an opportunity to perform. **The court stated that an employer who withdraws the offered employment before the employee is given an opportunity to perform fails to keep its promise in any respect**. **The court concluded that the prospective employee whose offer was withdrawn had a cause of action**.

In *Peck v. Imedia, Inc.*, 293 N.J. Super. 151, 679 A.2d 745 (1996), the court stated that the application of promissory estoppel to prospective at-will employees recognizes that there may be losses incident to reliance upon a job offer itself, even though the employer can terminate the relationship at any time. The court concluded that reliance on the promise of at-will

employment gave rise to a cause of action for damages flowing from the prospective employee's giving up her prior business and moving to another state.

In *Ravelo v. County of Hawaii*, 66 Haw. 194, 658 P.2d 883 (1983), a police officer resigned from his position in reliance on an offer of employment in another city. His wife also resigned from her job. Subsequently, the police officer was told that he was not going to be hired, and he and his wife were unsuccessful in attempting to get back their previous jobs. Relying upon the Restatement of Contracts §90 (1932), the Hawaii Supreme Court reversed the trial court's dismissal and concluded that promissory estoppel could be applied in the case of a promise of at-will employment.

### III. PLAINTIFF HAS PRESENTED A GENUINE ISSUE OF MATERIAL FACT AS AND TO HER FRAUD CLAIM

A claim for fraud under Illinois law may be established by clear and convincing evidence that: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Benda v. Per-Se Tech., Inc.*, 2005 U.S. Dist Lexis 13613 *1, *14, citing *Havoco of Am. Ltd. V. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1341 (7th Cir. 1992). Fraudulent intent is a question of fact for the trier of fact to decide. *Edward M. Cohon & Assocs. V. First Nat'l Bank*, 249 Ill.App.3d 929, 938, 618 N.E.2d 676 (Ill.App. 1993).

Defendant argues that all of the evidence Valerio has presented thus far is unable to establish the existence of the essential elements required to prove a claim of fraud. In its argument, Cygnus denies that any false statement of material fact occurred. In the alternative, Cygnus attempts to argue that in the event a false statement was made, Valerio still cannot establish fraud. As will be argued below, Valerio can establish each element of fraud.

Cygnus incorrectly states that Valerio alleged in her complaint that each job offer made to her were false statements of material fact. In addition to the false job offers, Valerio also argues that Lynch made false representations when he advised Valerio that her position would not be affected by any publication cancellations. Plaintiff alleges that Lynch guaranteed her that the failure of a publication would not affect her employment status with Cygnus. This was a false statement made by Lynch. Lynch knew that this statement was untrue – he knew, and admitted during his deposition, that if one of his publications closed, he was going to re-assign his current employees to existing publications, which would effectively eliminate a job for Valerio. This means that Lynch fraudulently advised Valerio that he would have a position for her either way.

Lynch's fraudulent statement to Valerio was made with the intention that she act upon it. Had Lynch not advised Valerio that her job was secure, Valerio obviously would not have left Western Printing Machinery to work for Cygnus. There is no question that the statement by Lynch failed to disclose a material fact, which, if known to Valerio, would have caused her to act differently. As to the requirement of "under circumstances creating a duty to speak," in Illinois, in order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak. *Magna Bank v. Jameson*, 237 Ill. App. 3d 614, 618, 604 N.E.2d 541 (1992). As her potential employer, there existed a special relationship between Lynch and Valerio. Summary judgment must be denied in this matter as there exists a dispute on a triable issue of fact as to whether Lynch made the false statements to Valerio.

## **CONCLUSION**

Valerio has presented numerous instances supported by legally sufficient evidence to raise genuine issues of material fact in this case. Therefore, Cygnus's Motion for Summary Judgment should be denied.

    Respectfully Submitted,
    PATRICIA VALERIO

    s/ Erin E. Buck
    One of Her Attorneys

Eugene K. Hollander
Erin E. Buck
**The Law Offices of Eugene K. Hollander**
33 North Dearborn, Suite 2300
Chicago, IL 60602
(312) 425-9100

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies that she caused copies of the foregoing **Plaintiff's Response to Defendant's Motion for Summary Judgment** to be served upon the counsel of record by electronic means on this 7th day of May, 2007

                                                            s/ Erin E. Buck
                                                          One of Her Attorneys